UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IAN RESNICK,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Case No. 21–cv–19571–ESK

OPINION

**KIEL, U.S.D.J.**

    **THIS MATTER** comes before the Court on petitioner Ian Resnick's motion to correct, vacate, or set aside his federal sentence under 28 U.S.C. § 2255 (2255 Motion). (ECF No. 1.) Respondent United States opposes the 2255 Motion. (ECF No. 5.) For the following reasons, I will deny the 2255 Motion. I decline to issue a certificate of appealability.

    **I. FACTS AND PROCEDURAL HISTORY**

    I adopt the underlying facts of petitioner's convictions as set forth in the United States Court of Appeals for the Third Circuit's precedential decision denying petitioner's direct appeal:

> The Vacation Ownership Group ("VOG") billed itself as a sort of advocacy group helping victims of timeshare fraud get out of their timeshare debts. After a lengthy and complex trial, a jury determined that VOG had in fact defrauded its customers, and that Adam Lacerda, Ian Resnick, and Genevieve Manzoni were each knowing participants in that fraud.
>
> ….
>
> In 2009, while working for Wyndham Vacation Resorts, Inc. (a timeshare sales company), Adam Lacerda and his wife, Ashley Lacerda, founded

VOG. VOG marketed itself as a timeshare consulting company and claimed that it could help customers cancel, purchase, or upgrade their timeshares … .

Lacerda created phone scripts for VOG's sales representatives to use when speaking with timeshare owners. One of these scripts was VOG's "bank settlement" pitch. This sales pitch was riddled with misrepresentations. Following this script, the VOG representatives used personal information compiled by VOG in "customer lead sheets" to make unsolicited calls to unsuspecting timeshare owners. The representatives said they were calling on behalf of a property owners' association to follow up on the owner's recent complaints. This was not true. The representatives also claimed they were working with the bank that held the loan for the owner's timeshare mortgage. This was also not true. They then promised to review the owner's account—which they could not do because they had no access to that account—and then to call the owner back.

During a follow-up call, VOG representatives offered to settle the timeshare owner's debt at a fraction of the remaining balance, for a negotiated fee. Later, during a closing call, the representatives had the timeshare owner electronically sign VOG's contract and pay its fee. The representatives then promised that the "mortgage would be paid off in full" and the timeshare owner would receive a "deed free and clear." But none of that happened. Instead, VOG just pocketed the money.

Lacerda also trained his VOG employees to use a fraudulent phone script for a timeshare "cancellation" sales pitch. Again, VOG representatives made unsolicited calls to timeshare owners and falsely told them that VOG had received their complaints, that VOG would do all the necessary work to cancel the owners'

2

> timeshares, and that cancellation would not damage the customers' credit ratings.
>
> . . . .
>
> While employed by Wyndham, Ian Resnick sent customer lead sheets to VOG and received a kickback for every resulting sale. In August 2010, Resnick left Wyndham to join VOG full time. Using the bank settlement and timeshare cancellation scripts, Resnick defrauded several customers. Recognizing Resnick's talents, Lacerda promoted him to Senior Contract Analyst.
>
> . . . .
>
> In November 2010, the FBI raided VOG's offices and the Lacerdas' home. Several VOG representatives left the company following the raid, including Resnick. So Lacerda convened an office-wide meeting where his lawyers, including Marc Neff, assured VOG staff that everything was okay. They told the employees that only Lacerda was under investigation, and that Neff had reviewed the sales scripts and verified that everything was legal. VOG abandoned the bank settlement pitch and revised the timeshare cancellation pitch to remove any references to working with the banks, while leaving many other misrepresentations in place. With these assurances and changes, many of VOG's representatives, including Resnick, returned and VOG resumed and expanded its operations.

*United States v. Lacerda, et al.*, 958 F.3d 196, 204–07 (3d Cir. 2020). Petitioner was indicted on January 23, 2013 for one count of conspiracy to commit mail fraud and wire fraud, 18 U.S.C. §§ 2, 1349; four counts of mail fraud, 18 U.S.C. § 1341; and two counts of wire fraud, 18 U.S.C. § 1349. *United States v.*

*Resnick*, No. 12–cr–00303–3 (D.N.J.) ("Crim. Case") (ECF No. 79.)[1]  Petitioner was convicted on all charges.  (*Id.* ECF No. 334.)

He moved for a judgment of acquittal or for a new trial, arguing in relevant part that there was no evidence that petitioner did anything to mislead or defraud VOG victim Dorothy Gerlach.[2]  (*Id.* ECF No. 345–1 p. 4.)  District Judge Noel L. Hillman denied that motion on June 29, 2015.  (*Id.* ECF No. 425.)  While that motion was still pending, petitioner filed a motion for a new trial on June 24, 2015 that alleged the United States had withheld a Form 302 investigatory report regarding the FBI's interview with Gerlach [Gerlach 302].[3]  (*Id.* ECF No. 421–1 p. 3.)  Petitioner also alleged that the United States withheld emails between Gerlach and a FBI agent that contradicted the statements attributed to Gerlach in the Gerlach 302.  (*Id.* pp. 3, 4.)  According to petitioner, the emails suggested that Gerlach did not incriminate petitioner in her statement.  (*Id.* p. 4.)  He also asserted that a victim loss document prepared by Gerlach for sentencing purposes did not make any references to petitioner being involved.  (*Id.* p. 6.)

Judge Hillman denied the motion on April 22, 2016 and proceeded to sentence petitioner to 216-months imprisonment followed by a 3-year term of supervised release.  (*Id.* ECF No. 485 pp. 2, 3.)  On September 22, 2016, Judge Hillman ordered petitioner to pay $ 2,735,142.99 in restitution.  (*Id.* ECF No. 535.)

---

[1] I take judicial notice of the public filings in petitioner's criminal case.

[2] Count 20 of the Superseding Indictment charged petitioner with mail fraud for causing Gerlach to mail a $14,500 check to VOG, and Count 34 charged petitioner with wire fraud for emailing Gerlach with the mailing address for the check.  (Crim. Case ECF No. 352 p. 22.)

[3] "The FD-302, commonly referred to simply as a '302', is the form commonly used by FBI agents to summarize witnesses' statements and interviews."  *Lacerda*, 958 F.3d at 218 n. 7.

Petitioner filed an appeal in the Third Circuit arguing that "that (1) the government suppressed material evidence; (2) the District Court miscalculated the number of his victims and the loss amount for those victims, and so erred at sentencing; (3) his due process rights were violated when his sentencing hearing was delayed; and (4) the District Court's restitution order was procedurally unsound and substantively unreasonable." *Lacerda*, 958 F.3d at 218. The panel concluded that petitioner forfeited his restitution challenge because he did not file a timely notice of appeal from the restitution order. *Id.* at 222. It rejected petitioner's other arguments and affirmed petitioner's convictions and sentence. *Id.* Petitioner filed a petition for a writ of certiorari, which the Supreme Court denied on November 2, 2020. *Resnick v. United States*, 141 S. Ct. 685 (2020).

Petitioner submitted this 2255 Motion on October 28, 2021. (ECF No. 1.) Judge Hillman ordered the United States to answer on November 9, 2021. (ECF No. 4.) The United States filed its answer on December 21, 2021. (ECF No. 5.) Petitioner filed a reply on April 6, 2022. (ECF No. 12.) This matter was reassigned to me on March 26, 2024. (ECF No. 13.)

## II.   LEGAL STANDARD

"[A] defendant in federal custody may file a motion collaterally attacking his sentence based on certain specifically listed grounds, namely that the sentence was imposed in violation of the Constitution or federal law, that the court was without jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence 'is otherwise subject to collateral attack[.]'" *United States v. Peppers*, 899 F.3d 211, 220 (3d Cir. 2018) (second alteration in original) (quoting 28 U.S.C. § 2255(a)).

## III.   DISCUSSION

The 2255 Motion raises three ineffective assistance of counsel claims. First, petitioner alleges that trial counsel erred by failing to call Gerlach to

testify at trial. (ECF No. 1 p. 4.) Second, he asserts that trial counsel inexcusably delayed sentencing, which resulted in an increase to petitioner's custodial sentence and restitution order. (*Id.* p. 5.) Third, petitioner claims that trial counsel was ineffective for failing to file a notice of appeal challenging the restitution order. (*Id.* p. 7.)

To succeed on his ineffective assistance claims, petitioner must first "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). He must then show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

### A.     Failure to Investigate Gerlach Matter

Petitioner argues that trial counsel provided ineffective assistance when he did not call Gerlach as a witness as trial or investigate the statements contained within the Gerlach 302. (ECF No. 1 p. 4.) "Prior to trial, Defense Counsel received [the Gerlach 302] written by the investigation agent, as well as emails suggesting that Ms. Gerlach did not accuse me of the representations claimed in the [Gerlach 302]." (*Id.*) He asserts that trial counsel would have "found that the statements in the [Gerlach 302] and in the FBI agent's testimony were false" if trial counsel had reviewed copies of emails Gerlach sent to the FBI agent. (*Id.*; ECF No. 12 ¶ 22.)

"The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *see also Berryman v. Morton*, 100 F.3d 1089, 1101 (3d Cir. 1996) ("The right to counsel does not require that a criminal defense

attorney leave no stone unturned and no witness unpursued."). "Where a petitioner challenges his counsel's decision as to which witnesses to call, courts are required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons petitioner's counsel may have had for proceeding as he did." *Judge v. United States*, 119 F. Supp. 3d 270, 284–85 (D.N.J. 2015) (cleaned up).

Petitioner asserts that Gerlach would have testified that she "had purchased 'points' usable at a Wyndham resort in Hawaii, and that not all of the points [were] delivered to them." (ECF No. 12 ¶ 52.) He claims this would have undermined the Government's claim that she fell victim to VOG's "bank settlement" scheme. (*Id.*) However, petitioner has not provided a sworn statement from Gerlach indicating that she would have testified to that effect at trial. "In the § 2255 context, other courts have similarly found that a petitioner needs to provide a sworn statement of fact from the proposed witness regarding what they would have testified to if a § 2255 petitioner is to establish *Strickland* prejudice." *Baskerville v. United States*, No. 13–cv–05881, 2018 WL 5995501, at *13 (D.N.J. Nov. 15, 2018), *aff'd* No. 19–3583 (3d Cir. Aug. 13, 2021). Therefore, I cannot conclude that petitioner was prejudiced by trial counsel's failure to call Gerlach as a witness. *See Duncan v. Morton*, 256 F.3d 189, 202 (3d Cir. 2001) (holding that defendant failed to establish *Strickland* prejudice as a result of counsel's alleged failure to interview witness because defendant did not provide sworn testimony from the witness).

Petitioner also fails on his argument that trial counsel was ineffective for failing to review discovery pertaining to the Gerlach-related charges. In support of his claim, petitioner relies on emails between VOG, himself, and Gerlach, (ECF No. 12–1); the Gerlach 302, (ECF No. 12–2); an excerpt of Special Agent Mesisca's trial testimony, (ECF No. 12–3); emails forwarded from Gerlach to an FBI agent (ECF No. 12–4); Gerlach's handwritten declaration of

7

losses, (ECF No. 12–5); and transcripts of defense investigator's post-trial telephone interviews with the Gerlachs, (ECF Nos. 12–6, 12–7.) I have reviewed petitioner's submissions and conclude there is nothing in them that suggests trial counsel failed to uncover information pertaining to petitioner's defense. As the Third Circuit noted in rejecting petitioner's *Brady* claim, "[f]ar from being material evidence that could have undermined Resnick's conviction, this evidence reinforces the jury's verdict." *Lacerda*, 958 F.3d at 219.[4] "There were two parts to the bank settlement pitch: VOG promised to help the victims pay off their debt and keep their timeshare property, and then, in a bait and switch, sold them a second timeshare through VOG. Gerlach's declaration, which expresses confusion over not receiving points she was promised, highlights that bait and switch." *Id.*

I therefore find that petitioner has not shown that trial counsel was ineffective for failing to investigate exculpatory evidence. Petitioner is not entitled to § 2255 relief on his first claim.

### B. Delay of Sentencing

"[T]he Sixth Amendment guarantees a defendant the right to a speedy *trial*, not a speedy *sentencing*." *Lacerda*, 958 F.3d at 219 (emphasis in original) (citing *Betterman v. Montana*, 578 U.S. 437 (2016)). However, there is a due process right to a timely sentencing. *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Petitioner argues that trial counsel's continuance requests and motions unnecessarily delayed his sentence, causing him to be sentenced above the minimum of the advisory sentencing range and given a "substantially increased" restitution obligation. (ECF No. 1 p. 5.)

---

[4] The Third Circuit also concluded that the United States did not withhold any evidence from the defense. *Lacerda*, 958 F.3d at 219.

The Third Circuit rejected petitioner's speedy-sentencing due process argument on direct appeal. *Lacerda*, 958 F.3d at 219–20. As part of that analysis, the panel found that petitioner had not been prejudiced by the delays because his guideline range had not been affected. *Id.* at 220. The Third Circuit specifically disapproved of petitioner's argument that he was prejudiced "because the government was able to identify additional victims and adduce sufficient evidence to prove their losses by a preponderance of the evidence. … Allowing the government time to identify additional victims did not affect [petitioner's] Sentencing Guidelines range." *Id.* This argument is equally unpersuasive in showing prejudice pursuant to *Strickland*. I will deny §2255 relief for this claim.

### C. Failure to Appeal Restitution Order

Petitioner's final argument is that trial counsel was ineffective for failing to file an amended notice of appeal after the entry of the restitution order. (ECF No. 1 p. 7.) Generally speaking, a claim that an attorney failed to file a requested notice of appeal "applies a different standard for prejudice: a reasonable probability that but for counsel's deficient performance, the petitioner would have availed himself of the foregone process." *Ross v. Adm'r E. Jersey State Prison*, 118 F.4th 553, 566 (3d Cir. 2024) (citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). The remedy for such an error is to permit the defendant to file an out-of-time appeal. *See Solis v. United States*, 252 F.3d 289, 295 (3d Cir. 2001).

However, I conclude that *Flores-Ortega* does not apply to petitioner's argument. "The *Flores-Ortega* standard, as an exception to the general *Strickland* standard, applies only when the entirety of direct appellate review has been rendered unavailable." *Ross*, 118 F.4th at 566; *see also Flores-Ortega*, 528 U.S. at 483 (explaining that the standard applied because there had been a "denial of the entire judicial proceeding"). Courts "cannot accord any

9

'presumption of reliability,' to judicial proceedings that never took place." *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 286 (2000)). Petitioner had a direct appeal, so the presumption of reliability applies even if he was unable to argue every claim he wished to present. "[L]ack of success on direct appeal is distinct from a lack of a direct appeal." *Ross*, 118 F.4th at 567. Petitioner "received an opportunity for direct appellate review of his sentence that did not preclude challenges to his conviction [so] he was not denied appellate review in its entirety. Accordingly, the *Flores-Ortega* standard of prejudice does not apply … ." *Id.* Any ineffective assistance claim petitioner may have would be assessed pursuant to traditional *Strickland* review. *See United States v. Scripps*, 961 F.3d 626, 635 (3d Cir. 2020) (explaining that a claim for failure to raise an issue on appeal is governed by *Strickland*).

That being said, petitioner's challenge to the restitution order is not cognizable under § 2255. "The plain and unambiguous language of § 2255 indicates that the statute only applies to "[a] prisoner in custody … claiming the right to be released."' *United States v. Trimble*, 12 F. Supp. 3d 742, 745 (E.D. Pa. 2014) (alteration and omission in original) (quoting 28 U.S.C. § 2255(a)). The Third Circuit has held that an order to pay restitution "is not the sort of 'significant restraint on liberty' contemplated in the 'custody' requirement of the federal habeas corpus statutes.'" *Id.* (quoting *Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003) ); *see also United States v. Ross*, 801 F.3d 374, 380–81 (3d Cir. 2015). Nor does combining a restitution challenge with claims addressing physical custody bring it within the scope of § 2255. *See Kaminski v. United States*, 339 F.3d 84, 89 (2d Cir. 2003) ("There is therefore no reason why the presence of a plausible claim against a custodial punishment should make a noncustodial punishment more amenable to collateral review than it otherwise might be."); *Ross*, 801 F.3d at 380–81 (citing cases). "That the claim challenging the forfeiture or restitution order is presented as an ineffective

10

assistance of counsel claim[] does not change this result." *King v. United States*, No. 22–cv–07230, 2025 WL 2237669, at *12 (D.N.J. Aug. 6, 2025) (citing cases). Therefore, I will deny § 2255 relief on this claim.

A district court must hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255(b); *see also United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021). I will not conduct an evidentiary hearing on the 2255 Motion because the record conclusively demonstrates that petitioner is not entitled to relief.

### IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). I decline to issue one.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, I decline to issue a certificate of appealability because jurists of reason would agree that petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

## V. CONCLUSION

For the reasons stated above, the 2255 Motion is denied.   No certificate of appealability shall issue.   An appropriate Order accompanies this Opinion.

                                                */s/ Edward S. Kiel*
                                                **EDWARD S. KIEL**
                                                **UNITED STATES DISTRICT JUDGE**

Dated:  August 20, 2025